# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
## Southern Division

| | |
|---|---|
| WILLIAM BORZA, | * |
| Plaintiff, | * |
| v. | * Civil No. TMD 16-901 |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | * |
| Defendant.[1] | * |

**MEMORANDUM OPINION GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Plaintiff William Borza seeks judicial review under 42 U.S.C. § 405(g) of a final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act. Before the Court are Plaintiff's Motion for Summary Judgment (ECF No. 16) and Defendant's Motion for Summary Judgment (ECF No. 19).[2] Plaintiff contends that the administrative record does not contain substantial evidence to support the Commissioner's decision that he is not disabled. No hearing is necessary. L.R. 105.6. For the reasons that follow, Defendant's Motion

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. She is, therefore, substituted as Defendant in this matter. *See* 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d).

[2] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as a procedural means to place the district court in position to fulfill its appellate function, not as a device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards." *Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002). For example, "the denial of summary judgment accompanied by a remand to the Commissioner results in a judgment under sentence four of 42 U.S.C. § 405(g), which is immediately appealable." *Id.*

for Summary Judgment (ECF No. 19) is **GRANTED**, Plaintiff's Motion for Summary Judgment (ECF No. 16) is **DENIED**, and the Commissioner's final decision is **AFFIRMED**.

# I

## **Background**

Plaintiff was born in 1967, has a high-school education, and previously worked as an automotive salesperson and panel maker. R. at 26, 163. Plaintiff protectively filed an application for DIB on January 2, 2013, alleging disability beginning on January 7, 2012, due to degenerative disc disease. R. at 135-42, 151, 162. The Commissioner denied Plaintiff's application initially and again on reconsideration, so Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). R. at 51-79. On November 13, 2014, ALJ F.H. Ayer held a hearing in Washington, D.C., at which Plaintiff and a vocational expert ("VE") testified. R. at 31-50. On February 3, 2015, the ALJ issued a decision finding Plaintiff not disabled from the alleged onset date of disability of January 7, 2012, through the date of the decision. R. at 9-30. Plaintiff sought review of this decision by the Appeals Council, which denied Plaintiff's request for review on January 27, 2016. R. at 1-8. The ALJ's decision thus became the final decision of the Commissioner. *See* 20 C.F.R. § 404.981; *see also Sims v. Apfel*, 530 U.S. 103, 106-07, 120 S. Ct. 2080, 2083 (2000).

On March 25, 2016, Plaintiff filed a complaint in this Court seeking review of the Commissioner's decision. Upon the parties' consent, this case was transferred to a United States Magistrate Judge for final disposition and entry of judgment. The case subsequently was reassigned to the undersigned. The parties have briefed the issues, and the matter is now fully submitted.

## II

## Summary of Evidence

The Court reviews here and in Part VI below Plaintiff's relevant medical evidence.

A.  **State Agency Medical Consultants**

On May 7, 2013, a state agency medical consultant, M. Feld, M.D., assessed Plaintiff's physical residual functional capacity ("RFC"). R. at 54-55. Dr. Feld opined that Plaintiff could (1) lift and/or carry twenty pounds occasionally and ten pounds frequently; (2) stand and/or walk for a total of about six hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform unlimited pushing and/or pulling. R. at 54. Plaintiff occasionally could balance, stoop, kneel, crouch, crawl, and climb ramps and stairs (but never ladders, ropes, or scaffolds). R. at 55. Plaintiff had no manipulative, visual, communicative, or environmental limitations. R. at 55. On July 5, 2013, another state agency consultant, Walter Cobbs, expressed the same opinion about Plaintiff's physical RFC, except that Plaintiff's overhead reaching with the right upper extremity was limited. R. at 63-65.

B.  **Mariam Razaq, D.O.**

"On August 11, 2011, [Plaintiff] presented to Mariam Razaq, D.O., at Potomac Pain and Rehabilitation Associates for complaints of neck and low back pain." R. at 17; *see* R. at 281-85. Dr. Razaq thereafter treated Plaintiff through at least 2014. *See* R. at 214-353. The ALJ reviewed Dr. Razaq's opinion in the ALJ's decision:

> On October [29,] 2014, Mariam Razaq, D.O., noted she had been treating [Plaintiff] since October 2011 for low back pain with radiation of pain into legs, muscle spasm, restriction in range, inability to sit, stand, or walk any length of time, difficulty sleeping due to pain, and impaired concentration due to pain medication. She noted an MRI of [Plaintiff's] lumbar spine revealed facet arthropathy, lumbar fusion at three levels, L3-S1, with four surgeries total, and an MRI scan of his cervical spine revealed disc degeneration and spinal stenosis. She opined [Plaintiff's] medical condition caused pain and fatigue in the neck and

low back that reached levels of severity that would affect [Plaintiff's] concentration/memory and cause an inability to focus and stay on task in a work setting 50% of the day and 80% of the week. Dr. Razaq opined [Plaintiff's] pain and/or fatigue resulted in a requirement for extra rest breaks causing him to be off task in a work setting more than one hour total during an 8-hour workday and that he would require bedrest for pain relief or because of fatigue such that he could not report to work periodically or 5 days a month on average.

Dr. Razaq further opined [Plaintiff] would not be able to work full time at any level of exertion. She opined [Plaintiff] could sit for a total of 2 hours during an entire 8-hour day in a work setting and stand or walk for a total of 2 hours during an entire 8-hour day in a work setting. She opined [Plaintiff] could frequently lift up to 10 pounds, occasionally lift up to twenty pounds, but never lift over 20 pounds. She opined [Plaintiff] could perform simple grasping and fine manipulation bilaterally, but no pushing and pulling of arm controls. Dr. Razaq opined [Plaintiff] could use feet during the workday for repetitive movements as in pushing and pulling of leg controls for limited times.

Finally, Dr. Razaq opined [Plaintiff] had no restriction of activities during the workday involving unprotected heights, being around moving machinery, or exposure to dust, fumes, and/or gases, but moderate restriction to driving automotive equipment and total restriction to exposure to marked changes in temperature and humidity. She opined [Plaintiff's] impairments were expected to last over 12 months from its date of onset and that his prognosis for recovery of function was poor/guarded.

R. at 23-24 (citations omitted); *see* R. at 311-13.

## C. Hearing Testimony

### 1. Plaintiff's Testimony

The ALJ reviewed Plaintiff's testimony in the ALJ's decision:

[Plaintiff's] representative noted [Plaintiff] had four back surgeries and he received a closed period of disability benefits in 2005. He stated [Plaintiff] returned to work and suffered constant pain. He reported [Plaintiff] experienced four car accidents during that time, which he stated [Plaintiff] attributed to his significant pain medication use during that time. He stated [Plaintiff's] physicians told him to stop working. He reported [Plaintiff] takes methadone and took oxycodone in the past. He stated [Plaintiff] suffers concentration and memory deficits, and naps during the day. He reported [Plaintiff] has also now developed a neck problem, in addition to his back problem, but he is unable to get an MRI scan of his cervical spine due to insurance issues. He stated [Plaintiff] additionally suffers from a significant diarrhea problem and that his limited insurance also prevents treatment for this issue currently.

4

[Plaintiff] testified he had multiple surgeries with his last surgery being a spinal fusion in 1998. He reported he stopped working in 2008 as he started missing work because he "just couldn't make it." He stated he was having back and neck problems that was [sic] causing a lot of pain. He testified he was having trouble even getting dressed. He reported he started missing a couple of days a week and although they were very lenient with him, they needed someone there so it was a mutual decision to part ways. He testified he drew unemployment benefits after leaving that job. He reported his father brought him to the hearing. He stated he wrecked multiple cars while on pain medication. He testified he tries not to drive at all and he reported he does not have a driver's license at this time. [Plaintiff] reported he receives treatment at the pain management clinic. He stated his prescriptions are generally for 30-day periods and that he is basically out of any other options. He testified he is not sure whether his "stomach issues," which cause diarrhea five days a week for a couple of hours each morning or constipation, is due to his medication or not. He reported he was told by "a handful of doctors" that the spinal fusion did not take. He stated he has had MRI scans since the fusion that have confirmed this and that he also has a hole in his right hip from the surgery.

On a typical day, he stated he goes to the bathroom and takes medicine. He stated he usually is done with the bathroom and hopefully able to eat something around noon. If he is having a good day, he reported he sometimes is able to do laundry or other things around the house. He stated he tries to do as much as he can on a good day, but that he typically pays for the activities for the next few days with increased pain. He reported he usually spends about 4-5 hours lying down and frequently watches television, reads, or does Sudoku puzzles. He testified his favorite positions are lying down or walking. He stated he is close to his family and he talks to his mother and father daily. He reported his family comes to his house to watch football with him on Sundays. He testified he is happier working and that he has a happier life when he is able to keep moving. He stated he was told at the age of 18, by a professor at Georgetown University who taught doctors how to do laminectomies and discectomies, that his back was deteriorating at such a rapid rate that he would be lucky to be walking still at the age of 30.

R. at 16-17; *see* R. at 34-35, 39-49.

### 2. VE Testimony

The VE testified that a hypothetical person with Plaintiff's same age, education, and work experience who had the RFC outlined in Part III below could not perform Plaintiff's past

work but could perform the light jobs of officer helper, counter clerk, or router.[3] R. at 37-38. A person off task 15% to 18% daily or who would miss work two days per month would not be able to work. R. at 38-39. With the exception of her testimony regarding a sit-stand option, percentage of time off task, and missed workdays, the VE's testimony was consistent with the *Dictionary of Occupational Titles*.[4] R. at 38-39.

### III

### Summary of ALJ's Decision

On February 3, 2015, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the alleged onset date of disability of January 7, 2012; and (2) had an impairment or a combination of impairments considered to be "severe" on the basis of the requirements in the Code of Federal Regulations; but (3) did not have an impairment or a combination of impairments meeting or equaling one of the impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1; and (4) was unable to perform his past relevant work; but (5) could perform other work in the national economy, such as an officer helper, counter clerk, or router. R. at 14-27. The ALJ thus found that he was not disabled from January 7, 2012, through the date of the decision. R. at 27.

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).

[4] "The Social Security Administration has taken administrative notice of the *Dictionary of Occupational Titles*, which is published by the Department of Labor and gives detailed physical requirements for a variety of jobs." *Massachi v. Astrue*, 486 F.3d 1149, 1152 n.8 (9th Cir. 2007); *see Pearson v. Colvin*, 810 F.3d 204, 205 n.1 (4th Cir. 2015); *DeLoatche v. Heckler*, 715 F.2d 148, 151 n.2 (4th Cir. 1983); 20 C.F.R. § 404.1566(d)(1). "Information contained in the [*Dictionary of Occupational Titles*] is not conclusive evidence of the existence of jobs in the national economy; however, it can be used to establish a rebuttable presumption." *English v. Shalala*, 10 F.3d 1080, 1085 (4th Cir. 1993).

In so finding, the ALJ found that Plaintiff had the RFC

> to perform light work as defined in 20 CFR 404.1567(b) except [Plaintiff] has the [RFC] to occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk about 6 hours in an 8-hour workday, sit for a total of about 6 hours in an 8-hour workday, occasionally reach overhead with the dominant right upper extremity, occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, and never climb ladders, ropes, and scaffolds. He requires the ability to alternate between sitting and standing at will.

R. at 15.

The ALJ also considered Plaintiff's credibility and found that his "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." R. at 24. The ALJ explained:

> [Plaintiff] has described daily activities that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. Although [Plaintiff] described activities which are fairly limited, a review of the medical evidence indicates [Plaintiff] reported he spent time outside, played ball with his 13-year-old son and attended his games, attempted to swim for exercise, and had no difficulty performing his activities of daily living with the use of medication and therapeutic modalities. Additionally, on October 29, 2014, [Plaintiff's] treating physician, Dr. Razaq, recommended [Plaintiff] participate in aerobic activity. [R. at 314-17.]
>
> [Plaintiff] has been prescribed and has taken appropriate medications for the alleged impairments, including narcotic pain medication, which weighs in [Plaintiff's] favor, but the medical records reveal that the medications have been relatively effective in controlling [Plaintiff's] symptoms. The record is clear in noting [Plaintiff] reported the medications were effective at each treatment visit with Dr. Razaq with no reported gastrointestinal or sedation side effects. [R. at 214-353.]
>
> With regard to his neck and shoulder pain, although [Plaintiff] has received treatment for the allegedly disabling impairments, that treatment has been essentially routine and/or conservative in nature. The evidence indicates he received one cortisone injection to his right shoulder and the remaining treatment has been through medication management, stretching, and ibuprofen, which [Plaintiff] reported was helpful on numerous occasions. [R. at 214-353.]

R. at 24.

The ALJ gave "great weight" to the opinions of the state agency medical consultants. R. at 25. The ALJ further agreed with Dr. Razaq's opinion about Plaintiff's ability to lift and carry, but otherwise gave Dr. Razaq's opinion "little weight as it is not supported by the evidence overall, including his [sic] own clinical records." R. at 25. The ALJ explained:

> Dr. Razaq opined [Plaintiff] had poor concentration due to pain medication, yet [Plaintiff] consistently reported no sedation with medications. Granted, [Plaintiff] did report, in September 2014, that Flexeril made him tired, but he only used it on occasion and not very often. These findings would also not support Dr. Razaq's opinion that there would be moderate restrictions for driving automotive equipment as this restriction would seem to flow from the foregoing and [Plaintiff] consistently denied any fatigue. Furthermore, Dr. Razaq consistently noted on physical exams that [Plaintiff's] mental status was normal. These findings and reports also call into question Dr. Razaq's opinion that pain and/or fatigue would affect [Plaintiff's] concentration/memory and cause an inability to focus and stay on task in a work setting, that extra rest breaks would be necessary, that bedrest would be required for pain relief or because of fatigue, and that full time work would be precluded (could only sit 2 hours and stand/walk 2 hours in an 8 hour work day). The undersigned does agree with Dr. Razaq's conclusion regarding [Plaintiff's] ability for lifting and carrying (20 pounds occasionally and 10 pounds frequently), but finds little to support his [sic] opinion that pushing and pulling of arm controls would be precluded, that pushing and pulling leg controls would be precluded for limited times, and that there could be no exposure to marked changes in temperature and humidity. Examination findings consistently found only tenderness, not pain, notwithstanding [Plaintiff's] reports of pain, and [Plaintiff] also consistently reported that he was able to do basic tasks at home. As such, this opinion was given little weight.

R. at 25 (citing R. at 311-13).

## IV

### Disability Determinations and Burden of Proof

The Social Security Act defines a disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period

8

of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-80 (2003). "If at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further." *Thomas*, 540 U.S. at 24, 124 S. Ct. at 379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant has the burden of production and proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work

9

activities. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).[5]

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). RFC is a measurement of the most a claimant can do despite his or her limitations. *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The Commissioner also will consider certain non-medical

---

[5] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Yuckert*, 482 U.S. at 141, 107 S. Ct. at 2291.

evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at step four, age, education, and work experience. *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *See Walls*, 296 F.3d at 290; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find that the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## V

### Substantial Evidence Standard

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). In other words, the issue before the Court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Id.* The Court's review is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42

U.S.C. § 405(g). Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *See Hancock*, 667 F.3d at 472; *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Hancock*, 667 F.3d at 472. Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

## VI

### Discussion

Plaintiff contends that the ALJ erred in evaluating the opinions of Dr. Razaq, a treating source. Pl.'s Mem. Supp. Mot. Summ. J. 3-8, ECF No. 16-1. In this regard, the Fourth Circuit reiterated the following standard for considering medical opinions. *Dunn v. Colvin*, 607 F. App'x 264, 267-68 (4th Cir. 2015). When evaluating medical opinions, the ALJ should consider "(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson*, 434 F.3d at 654; *see* 20 C.F.R. § 404.1527. "An ALJ's determination as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged

12

up 'specious inconsistencies,'" *Dunn*, 607 F. App'x at 267 (quoting *Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992)), "or has failed to give a sufficient reason for the weight afforded a particular opinion," *id.* (citing 20 C.F.R. § 404.1527(d) (1998)); *see* 20 C.F.R. § 404.1527(c).

A treating source's opinion on issues of the nature and severity of the impairments will be given controlling weight when well supported by medically acceptable clinical and laboratory diagnostic techniques and when the opinion is consistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2); *see Lewis v. Berryhill*, 858 F.3d 858, 867 (4th Cir. 2017). Conversely, however, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590. In other words, "a treating physician's opinion is to be accorded comparatively less weight if it is based on the physician's limited knowledge of the applicant's condition or conflicts with the weight of the evidence." *Meyer v. Colvin*, 754 F.3d 251, 256 (4th Cir. 2014) (citing *Craig*, 76 F.3d at 590; 20 C.F.R. § 404.1527(c)). Moreover, "the testimony of a non-examining physician can be relied upon when it is consistent with the record. Furthermore, if the medical expert testimony from examining or treating physicians goes both ways, a determination coming down on the side of the non-examining, non-treating physician should stand." *Smith*, 795 F.2d at 346 (citation omitted). An ALJ may reject a treating physician's opinion in its entirety and afford it no weight if the ALJ gives specific and legitimate reasons for doing so. *See Bishop v. Comm'r of Soc. Sec.*, 583 F. App'x 65, 67 (4th Cir. 2014) (per curiam) (citing *Holohan v. Massanari*, 246 F.3d 1195, 1202 n.2 (9th Cir. 2001); *Craig*, 76 F.3d at 589-90).

A medical expert's opinion as to whether one is disabled is not dispositive; opinions as to disability are reserved for the ALJ and for the ALJ alone. *See* 20 C.F.R. § 404.1527(d)(1). Generally, the more the medical source presents relevant evidence to support his opinion, and the better that he explains it, the more weight his opinion is given. *See id.* § 404.1527(c)(3). Additionally, the more consistent the opinion is with the record as a whole, the more weight the ALJ will give to it. *See id.* § 404.1527(c)(4); *see also Dunn*, 607 F. App'x at 268.

Plaintiff first asserts that the ALJ failed to evaluate under Social Security Ruling[6] ("SSR") 96-2p whether the opinions of Dr. Razaq should be accorded controlling weight. Pl.'s Mem. Supp. Mot. Summ. J. 5-6, ECF No. 16-1. Under SSR 96-2p, however, "a finding that a physician's opinion is inconsistent with the other substantial evidence in a claimant's case record is adequate to support a determination that the opinion is not entitled to controlling weight." *Burger v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-14-1345, 2015 WL 467662, at *3 n.2 (D. Md. Feb. 2, 2015) (citing SSR 96-2p, 1996 WL 374188, at *4 (July 2, 1996)). Thus, "SSR 96-2p did not require the ALJ to make any additional findings to determine that [the] opinions [of Dr. Razaq] were not entitled to controlling weight." *Id.*

Plaintiff then maintains that, in affording Dr. Razaq's opinions less than controlling weight, the ALJ failed to consider the factors cited in *Johnson* and in 20 C.F.R. § 404.1527(c). Pl.'s Mem. Supp. Mot. Summ. J. 6-7, ECF No. 16-1. In this case, however, "[w]hile the ALJ did not explicitly analyze each of the *Johnson* factors on the record, the ALJ was clear that [the ALJ]

---

[6] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. *Heckler v. Edwards*, 465 U.S. 870, 873 n.3, 104 S. Ct. 1532, 1534 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." *Pass*, 65 F.3d at 1204 n.3.

concluded that [Dr. Razaq's] opinion was not consistent with the record or supported by the medical evidence, which are appropriate reasons under *Johnson*" to afford a treating physician's opinion less than controlling weight. *Bishop*, 583 F. App'x at 67.

Plaintiff also fails to demonstrate how a consideration of these factors would alter the weight given by the Commissioner to Dr. Razaq's opinion. The ALJ appropriately gave little weight to Dr. Razaq's opinion that Plaintiff had poor concentration as a result of pain medication because the ALJ found that he consistently reported no sedation with medications. R. at 25; *see* R. at 214, 218, 221, 224, 228, 231, 235, 238, 241, 244, 247, 250, 253, 256, 259, 262, 289, 292, 295, 299, 302, 305, 308, 315, 319, 323, 326, 330, 333, 337, 341, 344, 348, 351. The ALJ likewise found that Plaintiff's denials of fatigue (R. at 315, 319, 323, 327, 330, 334, 337, 341, 344, 348, 352) belied Dr. Razaq's opinion that Plaintiff would be moderately restricted in driving automotive equipment. R. at 25. Substantial evidence thus supports the little weight given by the ALJ to Dr. Razaq's opinions because they were not consistent with the doctor's treatment notes. *See Burch v. Apfel*, 9 F. App'x 255, 259 (4th Cir. 2001) (per curiam) (ALJ did not err in giving physician's opinion little weight where physician's opinion was not consistent with her own progress notes); *Craig*, 76 F.3d at 590 (upholding ALJ's rejection of treating physician's opinion because record contained persuasive contradictory evidence; opinion was conclusory and based on claimant's subjective reports, and treating physician's own notes contradicted his opinion). Substantial evidence of Plaintiff's reported ability to perform activities at home (R. at 47-48, 169-76, 184-92, 326, 341, 344, 348) further supports the ALJ's finding that these activities belied Dr. Razaq's opinions about his ability to push and pull and his inability to be exposed to marked changes in temperature and humidity (R. at 312-13), as a claimant's daily activities can support the ALJ's discounting of a treating physician's opinion. *Milam v. Colvin*,

15

794 F.3d 978, 984 (8th Cir. 2015); *see Craig*, 76 F.3d at 590 (determining that treating physician's medical notes and claimant's reported daily living activities were persuasive evidence that contradicted physician's conclusory opinion based on claimant's subjective reports of pain); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600-02 (9th Cir. 1999) (considering inconsistency between treating physician's opinion and claimant's daily activities to be specific and legitimate reason to discount treating physician's opinion); *Chavis v. Apfel*, No. 98-1145, 1998 WL 827322, at *3 (4th Cir. Dec. 1, 1998) (per curiam) (unpublished table decision) ("Here, the ALJ properly discounted the opinions of several of [the claimant's] treating physicians that she was disabled because the opinions were conclusory and inconsistent with various activities that [the claimant] has engaged in over the years."). *But see Lewis*, 858 F.3d at 868 n.3 (noting that disability claimants "should not be penalized for attempting to lead normal lives in the face of their limitations" (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998))).

Plaintiff further asserts that the ALJ failed to find that his "incomplete fusion from L3 to S1" was a severe impairment, and so the ALJ's evaluation of Dr. Razaq's opinion is "insupportable." Pl.'s Mem. Supp. Mot. Summ. J. 8, ECF No. 16-1. "[I]ssues averted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived for purposes of appeal," however. *Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26, 36 (1st Cir. 1994). Without further explanation of his argument, Plaintiff's contention in this regard thus is unavailing.

Plaintiff also argues that the ALJ "failed to place any limitation upon [his] ability to walk, without explanation." Pl.'s Mem. Supp. Mot. Summ. J. 8, ECF No. 16-1. As the Commissioner points out, however, the ALJ found that Plaintiff could stand or walk for a total of six hours in an

eight-hour workday, and the ALJ also included an option to alternate between sitting and standing at will. R. at 15. Because "this option affords [Plaintiff] the greatest possible latitude in accommodating [his] own standing and walking limitations," *Hammond v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-10-0499, 2013 WL 141144, at *3 (D. Md. Jan. 9, 2013), Plaintiff's argument is without merit.

Plaintiff finally maintains that the ALJ erred in finding that "[e]xamination findings consistently found only tenderness, not pain, notwithstanding [his] reports of pain" (R. at 25). Pl.'s Mem. Supp. Mot. Summ. J. 8, ECF No. 16-1. Even if this were erroneous, "reversal is not required when the alleged error 'clearly had no bearing on the procedure used or the substance of [the] decision reached.'" *Ngarurih v. Ashcroft*, 371 F.3d 182, 190 n.8 (4th Cir. 2004) (quoting *Mass. Trs. of E. Gas & Fuel Assocs. v. United States*, 377 U.S. 235, 248, 84 S. Ct. 1236, 1245 (1964)). In short, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *see Johnson v. Apfel*, 189 F.3d 561, 564 (7th Cir. 1999) (Posner, C.J.) (upholding ALJ's rejection of physician's check-box form where it was contradicted by evidence in record); *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (finding that ALJ permissibly rejected psychological evaluations because they were check-off reports that did not contain any explanation of the bases of their conclusions). Because substantial evidence supports the weight afforded by the ALJ to Dr. Razaq's opinions, the Court grants Defendant's Motion for Summary Judgment and affirms the Commissioner's final decision.

In sum, substantial evidence supports the decision of the ALJ, who applied the correct legal standards here. Thus, Defendant's Motion for Summary Judgment is **GRANTED**,

Plaintiff's Motion for Summary Judgment is **DENIED**, and the Commissioner's final decision is **AFFIRMED**.

## VII

## Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 19) is **GRANTED**. Plaintiff's Motion for Summary Judgment (ECF No. 16) is **DENIED**. The Commissioner's final decision is **AFFIRMED**. A separate order will issue.

Date: August 28, 2017  /s/
Thomas M. DiGirolamo
United States Magistrate Judge